W. D. TURNIPSEED, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—FORGERY—INDICTMENT NEED NOT ALLEGE INSTRUMENT TO HAVE BEEN FALSELY MADE. IMMATERIAL HARMLESS ALTERATION OF INSTRUMENT NOT FORGERY.

1. Although our statute defining forgery uses the language "who ever falsely makes, alters, forges or counterfeits," yet it is well settled that while it is usual in indictments for the crime to aver that the defendant "did falsely forge and counterfeit," still it is sufficient to allege that he "forged and counterfeited," since the adverb (falsely) is sufficiently implied in the words forged and counterfeited.

2. Where the alleged forgery of an instrument consists in an alteration of it, the alteration must be material, so as to change, modify or alter the obligations imposed by the instrument, otherwise it creates no falsity in the seeming legal efficacy of the writing and there is no forgery.

This case was decided by Division A.

Writ of error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the Court.

*Daniel Campbell,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

TAYLOR, C. J.

The plaintiff in error was indicted, fried and convicted of the crime of forgery in the Circuit Court of Walton county, and seeks reversal here of the judgment and sentence pronounced by writ of error.

The indictment upon which he was tried is as follows: "In the name and by the authority of the State of Florida.

. In the Circuit Court of the First Judicial Circuit of the State of Florida, for Walton county, at the Spring term thereof, in the year of our Lord one thousand nine hundred and one, Walton county, to-wit: The grand jurors of the State of Florida, enquiring in and for the body of the county of Walton, upon their oaths do present that one William Turnipseed, late of the county of Walton aforesaid, in the Circuit and State aforesaid, on the 1st day of March, in the year of our Lord one thousand nine hundred and one, at and in the county of Walton, aforesaid, then and there being and then and there having in his possession a certain 'writing obligatory, which writing obligatory was then and there in words

and letters and figures as follows: 'I, M. M. Owens,' do lease unto W. D. Turnipseed my mother's farm in the county of Walton, State of Florida, situated on White creek near the valley church, for a term of three years, commencing Jany. 1st, 1901, for the sum of $150.00, or its equivalent to be paid as follws: Four thousand (4000) good rails are to be split and put up the first year by W. D. Turnipseed, in which I am to allow $40.00 on toward to rent for the 4000 rails when split and put up on said farm where they are the greatest needed, and if 4000 rails are not enough to fix a good fence on said farm, I, M. M. Owens, do promise to have enough rails split to make a fence strong enough to keep stock out of said farm; and that W. D. Turnipseed does further agree to help build a house on said farm to live in with the exception of six days work, which is to be paid for by M. M. Owens when said house is complete, with the exception of ceiling and a front gallery and the 4000 rails are split and put up $75.00 or half the rent of said place will be paid; at the end of the second year $37.50 more is to be paid; at or about the end of the third year $37.50 more to be paid, which will be the entire rent for three years. I do further promise to pay for and have the material put on the ground for building said house, and should W. D. Turnipseed wish to seal or help seal and put gallery to said house at a reasonable price, the amount paid for said work will be deducted from the rent to be paid. if I furnish material I give leave to W. D. Turnipseed to work and clear any land on the east side of White creek that is enclosed within the fence at present, and that the rails split are to be split along the banks of White creek in the piney woods on west side of creek or anywhere in

side of the enclosure of present field, and that he may
clear any land on west side of creek belonginig to said
farm.  W. D. Turnipseed is to take care of all trees, such
as shade trees around house and lot, and all fruit trees
of any kind, and have use of same, and at the end of first
three years he is to have refusal of place for two more
years.  Should W. D. Turnipseed fail to comply with this
contract herewith stated he will forfeit his rite to hold
said place when the rents are paid, and that each crop
made on said place is to stand good for the rent of said
place for the year preceding.

Agreed to this 16th of Feb. 1901.

                    M. M. OWENS,
                    W. D. TURNIPSEED.'

He, the said William Turnipseed, then and there hav-
ing said writing obligatory in his possession, did then
and there in Walton county, State of Florida, on the 1st
day of March, A. D. 1901, feloniously make, alter forge
and counterfeit the said writing obligatory by them and
there falsely obliterating and defacing the words 'with
the exception of six day swork, in said writing obligatory,
and inserting therein in place of the words 'with the ex-
ception of six days work' the words 'labor or material
furnished by W. D. Turnipseed' which said writing obli-
gatory, as falsely forged and altered, was then in words
and figures as follows, to-wit: 'I, M. M. Owens, do lease
unto W. D. Turnipseed my mother's farm in the county of
Walton, State of Florida, situated on White creek near
the valley church, for a term of three years commencing
Jany. 1st, 1901, for the sum of $150.00 or its equivalent,
to be paid as follows:  Four thousand (4000) good rails
are to be split and put up the first year by W. D. Turnip-

8 S. C.

seed, in which I am to allow $40.00 on towards the rent for the 4000 rails, when split and put up on said farm where they are the greatest needed, and if 4000 rails are not enough to fix a good fence on said farm, I, M. M. Owens, do promise to have enough rails split to make a fence strong enough to keep stock out of said farm; and that W. D. Turnipseed does further agree to help build a house on said farm to live in, labor or material furnished by W. D. Turnipseed, which is to be paid for by M. M. Owens, when said house is complete with' the exception of ceiling and a front gallery, and the 4000 rails are split and put up $75.00 or half the rent of said place will be paid; at the end of the second year $37.50 more is to be paid, at or about the end of the third year $37.50 more to be paid, which will be the entire rent for three years. I do further promise to pay for and have the material put on the ground for building said house, and should W. D. Turnipseed wish to seal or help seal and put gallery to said house at a reasonable price, the amount paid for said work will be deducted from the rent to be paid. If I furnish material I give leave to W. D. Turnipseed to work or clear any land on the east side of White creek that is enclosed within the fence at present, and that the rails split are to be split along the banks of White creek in the piney woods along the west side of creek or anywhere inside of the enclosure of present field, and that he may clear any land on west side of creek belonging to said farm. W. D. Turnipseed is to take care of all trees, such as shade trees around house and lot, and all fruit trees of any kind, and have use of same, and at the end of first three years he is to have refusal of place for two more years. Should W. D. Turnipseed fail to comply

with this contract herewith stated he will forfeit his rite to hold said place when the rents are paid, and that each crop made on said place is to stand good for the rent of said place for the year preceding.

Agreed to this 16th of Feb. 1901.

M. M. OWENS,
W. D. TURNIPSEED,

with intent then and there to injure and defraud the said M. M. Owens, against the form of the statute in such cases made and provided, to the evil example of all others in like case offending, and against the peace and dignity of the State of Florida."

The defendant moved to quash this indictment upon the following grounds: 1st. The indictment charges no offense against the laws of the State of Florida.

2nd. It was not alleged that the instrument was falsely made or altered.

3rd. Because the indictment is vague, indefinite and uncertain.

4th. It does not allege that the instrument was made or altered with intent to injure or defraud the owner of the property.

This motion was denied, and its denial is assigned as error.

After verdict the defendant also moved in arrest of judgment on the following ground: 1. That said indictment does not charge that said alteration was "falsely made" as the statute provides. This motion was also overruled, and such ruling is assigned as error.

As these two assignments both invole the same question, viz: The sufficiency of the indictment, they will be discussed together. The indictment charges that the

defendant did on, &c., "feloniously make, altar, forge and counterfeit the said writing obligatory by then and there falsely obliterating and defacing the words 'with the exception of six days work' in said writing obligatory, and inserting therein in place of the words 'with the exception of six days work,' the words 'labor or material furnished by W. D. Turnipseed' which said writing obligatory, as falsely forged and altered, was then in words and figures as follows:"    It is contended here in support both of the motion to quash the indictment and in arrest of judgment that the indictment is fatally defective in charging that the defendant did "feloniously make, alter, forge and counterfeit the said writing obligatory," instead of charging in the language of our statute, section 2479 Revised Statutes, that he did *"falsely* make, alter, forge and counterfeit;" that it was necessary to allege that the making, altering, forging and counterfeiting was *falsely* done, and because it is not alleged that it was *falsely* done the indictment is fatally defective.    This contention is untenable.    Although our statute in defining the crime uses the language "whoever falsely makes, alters, forges or counterfeits," yet we think that it is well settled that while it is usual in such indictments to aver that he did *falsely* forge and counterfeit, still it is sufficient to allege that the defendant "forged and counterfeited," since the adverb (*falsely*) is sufficiently implied in the words *forged* and *counterfeited*.    2    Bish.    New Crim. Proc. Sec. 426 and authorities cited in note 3; 2 Russ. on crimes (9th. ed.) p. 794; 2 East. P. C. 985.

It is next contended that the alteration alleged to have been made in the instrument forged was immaterial, and really effected no substantial change in any of the obliga-

tions of the instrument, and, therefore, did not amount to forgery. This contention, we think, is well taken. As we interpret the instrument in its original form the defendant bound himself to split and put up on the farm 4000 ralis for which he was to have credit on the rents by him contracted to be paid of the sum of $40, then he further obligated himself to help in the construction on said farm of a dwelling house, "with the exception of six days work" that was to be paid for by Owens, the other party to the contract; that is, as we understand it, the defendant agreed to perform or pay for the labor neces sary to build the dwelling house, except that Owens was to pay for six days of labor on such house, and upon the completion of the house, with the exception of ceiling same and erecting a front gallery thereto and the completion of the splitting and putting up of the 4000 rails, the defendant was to have a total credit on the rents he was to pay of $75, or, in other words, he was to have a credit of $40 for splitting and putting up 4000 rails, and a further credit of $35 for his work in erecting the dwelling house. The alteration effected in the instrument obligates the said Owens to pay for all of the labor and material furnished by the defendant. The contract elsewhere expressly obligates Owens to pay for and deliver on the ground all of the *material* for the house, and he was further obligated by the original contract in its unaltered form to pay Owens for his labor on the house the limited sum of $35, in the shape of credit on his rents. As we construe the original contract Owens agreed to pay the defendant $35 for his labor on the house, and to pay for all of the materials for same, and under the contract in its altered condition the same obligation rests on

Owens, and nothing more. Turnipseed, the defendant, is limited to the sum of $35 as remuneration for the labor necessary in building the house, both under the original and altered instrument, and under both Owens is bound to furnish and pay for all of the material and to give Turnipseed credit for $35 for the work in building the house. The instrument in its altered form does not impose any other or greater obligation upon either party to it than they were under by the original unaltered instrument; therefore the alteration effected no material change in the instrument, and was consequently immaterial and harmless, and does not constitute forgery. Where the forgery of an instrument consists in an *alteration* of it, the alteration must be *material,* otherwise it creates no falsity in the seeming legal efficacy of the writing and there is no forgery. King v. Treble, 2 Leach, 1040; Jackson v. State, 72 Ga. 28; 2 Bish. New. Crim. Law, Sec. 573-577. Having arrived at this conclusion, it follows that the court erred in denying the motion to quash the indictment.

For the error found the judgment of the court below is reversed with directions to quash the indictment and to discharge the defendant, at the cost of the defendant in error.